No. 20,136.

KALAMATH INVESTMENT CO., ET AL., *v.* ASPHALT
PAVING CO.
(384 P. [2d] 938)

Decided September 3, 1963.

Mr. STANLEY W. PRISNER, for plaintiffs in error.

Mr. F. RICHARD HITE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

HUDSON, doing business as Best Wood Products Co., brought an action to enforce a materialman's lien against certain described land and improvements situate in Jefferson County and owned by Columbine Chapel, Inc., hereinafter referred to as Columbine. Also named as a party defendant was the Kalamath Investment Co., which had an interest in the subject property by virtue of a recorded deed of trust.

Numerous other lien statements concerning this same property had also been duly filed in the office of the Jefferson County Clerk and Recorder and these lien claimants were joined as parties defendant, one being Asphalt Paving Co., hereinafter referred to as Asphalt, which by cross claim asserted its right to a lien against the aforementioned property of Columbine.

Apparently all claims, counterclaims and cross claims arising out of Columbine's efforts to construct a chapel were resolved without the necessity of trial, save and except that of Asphalt. This latter claim in due time came on for a trial to the court, at the conclusion of which a money judgment was entered for Asphalt against Columbine in the amount of $3909.40, plus interest and costs. The trial court then went on to decree that Asphalt "is entitled to a lien on the property" owned by Columbine and that the same should be "sold pursuant to the statutes of Colorado pertaining to foreclosures of mechanic's liens." By writ of error Columbine and Kalamath Investment Co. seek reversal of this judgment.

The central issue to be resolved is whether Asphalt,

the lien claimant, as a prerequisite to the establishment of its lien right against the real property owned by Columbine must show that within six months "after the last work or labor is performed, or materials furnished or after the completion of the building, structure or other improvement" it duly filed in the office of the County Clerk and Recorder of Jefferson County "a notice stating that such action [i.e., to enforce the lien] has been commenced within that time to enforce the same."

The statute with which we are primarily concerned is C.R.S. '53, 86-3-10, and reads as follows:

*"No lien claimed by virtue of this article, as against the owner of the property or as against one primarily liable for the debt upon which the lien is based or as against anyone who is neither the owner of the property nor one primarily liable for such debt, shall hold the property longer than six months* after the last work or labor is performed, or materials furnished or after the completion of the buildings, structure or other improvement, or the completion of the alteration, addition to, or repair thereof, as prescribed in section 83-3-9, unless an action shall have been commenced within that time to enforce the same, and *unless also a notice stating that such action had been commenced shall have been filed for record within that time in the office of the clerk and recorder of the county in which said property is situate.* Where two or more liens are claimed of record against the same property, the commencement of any action and the filing of the notice of the commencement of such action within that time by any one or more of such lien claimants in which action all of the lien claimants, as appear of record, are made parties, either plaintiff or defendant shall be sufficient." (Emphasis supplied.)

The trial court held "that the filing of the notice was not required," apparently so holding on the premise that a notice of lis pendens is not required where the action to enforce the lien is against the owner of the property

who in this instance is also the one primarily liable for the debt.

It is quite true that in *Laverents v. Craig,* 74 Colo. 297, 225 P. 250 (1923) it was said:

" . . . lis pendens is not a necessary prerequisite of a suit where the action is against the *owner of the property, or one primarily liable for the debt.* In such case there is no necessity for the notice given by the filing of a notice of lis pendens.

"In *Sheffield v. Early,* 25 N.Y. Suppl. 1098, the court said: 'The object of a lis pendens is to give notice of the pendency of the action to persons who may subsequently acquire or seek to acquire rights in the property, but it is not for the protection of the parties to the action, for they have notice of its pendency, and of the claim made by it.'

"This ruling is not to be understood therefore, as waiving the requirement in cases to which the statute properly applies. It cannot apply in this case, as the suit was against the owner of the property and she, of course, had full notice of the action." (Emphasis supplied.)

■ However, the General Assembly in 1937 amended the lien statute with which we are here concerned and in so doing very obviously intended to change the law as previously announced and applied in *Laverents v. Craig,* supra. This particular amendment was a part of an act the announced purpose of which was "to render titles to real property and to interests and estates therein more safe, secure and marketable," and in effect provided that a notice of lis pendens *was* a prerequisite to the establishment of a lien right even "as against the owner of the property or as against one primarily liable for the debt upon which the lien is based." It is at once noted that the General Assembly in 1937 in its amendment of the aforementioned lien statute used exact phraseology previously used by this court in *Laverents v. Craig* wherein this Court had declared that a lis pen-

dens was *not* a necessary prerequisite in an action "against the owner of the property or . . . one primarily liable for the debt."

The General Assembly having thus spoken in clear and understandable language, we must of course give effect thereto, and accordingly we conclude that the trial court erred in holding that "no notice of lis pendens is required."

Asphalt does not here contend that under C.R.S. '53, 86-3-10, a notice of lis pendens is "not required," even though such was the express holding of the trial court. Rather, Asphalt in its brief states that the trial court was in fact "advised" by counsel that another lien claimant in the same action had made a timely filing of a notice of lis pendens, and that by the terms of the statute itself such is sufficient. Columbine in its brief disputes this assertion and categorically states that "no lis pendens was ever filed by any party in connection with the action below."

We are bound by the record as made in the trial court and are not at liberty to add to it on the basis of a unilateral suggestion contained in the brief of one of the disputants. See *Noice v. Jorgensen,* 151 Colo. 459, 378 P. (2d) 834. The record before us does not disclose compliance by Asphalt or any other lien claimant with the lis pendens requirement as set forth in C.R.S. '53, 86-3-10.

Finally, Asphalt contends that any failure on its part to file a lis pendens is in the nature of "confession and avoidance" and should have been affirmatively pled by Columbine. As authority therefor, Columbine cites *Markoff v. Barenberg,* 149 Colo. 311, 368 P. (2d) 964. With this contention we are in disagreement. The *Markoff* case is not analogous to the instant one but involved an assignment of realty by the property owner for the benefit of his creditors. It was this assignment which was labeled as an affirmative defense in the situation where subsequent to the assignment the property

owner was sued by one seeking to enforce a lien against his property.

██ Asphalt, being the lien claimant, at all times had the burden of proving its right to a lien on the property belonging to Columbine. In this regard in 57 C.J.S. 959 — Mechanic's Liens § 308, it is stated:

"It is presumed that every mechanic or materialman desires the security given by Mechanic's lien laws. *The existence of a lien or privilege is not presumed; no act necessary to the acquisition of a lien can be presumed to have been performed in the absence of proof that it was performed . . . the claimant has the burden* of proving his cause of action as rests on a complainant in other civil actions . . . and *to show that he has complied with all of the essential requirements of the statute under which he claims.*" (Emphasis supplied.)

Quite clearly Asphalt did not prove all of the "essential requirements" set forth in C.R.S. '53, 86-3-10, and this being the case it has thus failed to establish its right to a lien on the property belonging to Columbine.

██ Columbine also contends that the trial court erred in entering judgment in favor of Asphalt, and against it in the amount of $3909.40, plus interest and costs. In this connection Columbine argues that the evidence fails to establish a contract between Asphalt and Columbine, but at best only shows a contract between Asphalt and one Velman Seal. Such theorizing, however, ignores the fact that the record also discloses that Velman Seal was an officer of Columbine and that in his dealings with Asphalt he was not acting for himself but on behalf of Columbine. Suffice it to say that, the entire record considered, Columbine's contention in this regard is deemed to be without merit.

The judgment so far as it decrees that Columbine is indebted to Asphalt in the amount of $3909.40, plus interest thereon and costs, is affirmed. However, that part of the judgment decreeing a lien right on the property of Columbine in favor of Asphalt is reversed and

the cause remanded with directions to vacate that part of the judgment decreeing a lien on the property of Columbine.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.