## BAUER v CITY OF GARDEN CITY

Docket No. 89028. Submitted April 15, 1987, at Detroit. Decided May 20, 1987.

Helen Bauer fell and injured herself in a shopping center parking lot owned by the City of Garden City. She filed suit against the city in Wayne Circuit Court alleging that defendant had breached its duty owed to invitees of the shopping center to remove ice and snow from the parking lot and that she fell and injured herself as a result of defendant's breach of that duty. The court, Joseph B. Sullivan, J., granted summary judgment in favor of defendant, finding that the doctrine of "natural accumulation" applied and relieved the city of responsibility for plaintiff's injury. The Court of Appeals reversed and remanded the case to the trial court, finding that defendant owed plaintiff a duty of reasonable care and that plaintiff had stated a viable claim. In passing, the Court of Appeals stated that defendant had not raised the defense of governmental immunity and that, in any case, the Court did not view ownership of a shopping center parking lot as a governmental function. 139 Mich App 354 (1984). Defendant neither moved for rehearing nor applied for leave to appeal to the Supreme Court. Shortly thereafter, the Supreme Court decided *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567 (1984). Defendant subsequently moved for summary disposition in the trial court on the ground that it was entitled to governmental immunity as set forth in *Ross*. The motion was denied. Defendant was granted leave to appeal. Plaintiff cross-appealed, arguing that defendant is not

REFERENCES

Am Jur 2d, States, Territories, and Dependencies §§ 99 *et seq.*

Am Jur 2d, Trial § 927.

Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.

Erroneous decision as law of case on subsequent appellate review. 87 ALR2d 271.

Comment Note.—Municipal immunity from liability for torts. 60 ALR2d 1198.

State's immunity from tort liability as dependent on governmental or proprietary nature of function. 40 ALR2d 927.

entitled to governmental immunity and that defendant's appeal is barred by the doctrine of law of the case.

The Court of Appeals *held:*

1. Plaintiff's contention that defendant waived entitlement to governmental immunity by not asserting it as an affirmative defense is rejected. Governmental immunity is not an affirmative defense, but a characteristic of government which prevents imposition of tort liability. A plaintiff bears the burden of pleading facts in his complaint which would justify a finding that recovery in his tort cause of action is not barred by governmental immunity.

2. Defendant's operation of the parking lot was a governmental function.

3. Plaintiff argued the question of governmental immunity in her brief on the first appeal. The issue therefore was before the Court of Appeals and was decided. If an issue is properly before the Court of Appeals, the Court's decision on the question is binding on the lower court and on any later panels of the Court of Appeals which hear the case.

4. The fact that *Ross,* which contradicts the Court of Appeals' earlier holding in this case, was decided during the interim between the earlier holding and the present appeal does not make any difference to the application of the doctrine of the law of the case. An intervening change in the law does not alter the applicability of the law of the case doctrine. Defendant had the opportunity to appeal the earlier holding of the Court of Appeals and did not do so. It is therefore bound by that decision.

Affirmed.

1. GOVERNMENTAL IMMUNITY — PLEADING.

Governmental immunity is not an affirmative defense, but a characteristic of government which prevents imposition of tort liability; a plaintiff bears the burden of pleading facts in his complaint which would justify a finding that recovery in his tort cause of action is not barred by governmental immunity.

2. MUNICIPAL CORPORATIONS — GOVERNMENTAL IMMUNITY — PARKING LOTS.

The operation by a city of a shopping center parking lot which it owned was a governmental function where the city's charter gave the city all powers possible for a city to have under the constitution and laws of the State of Michigan and incorporated by reference the parking facility language of the home rule cities act (MCL 117.4h; MSA 5.2081).

3. APPEAL — LAW OF THE CASE — DICTA.

 The doctrine of law of the case prevents legal questions, whether dicta or not, which have been passed on by an appellate court from being differently determined by the trial court on remand or by the appellate court on a subsequent appeal in the same case where the facts remain materially the same.

4. APPEAL — LAW OF THE CASE — INTERVENING CHANGES IN LAW.

 An intervening change in the law does not alter the applicability of the doctrine of law of the case.

*Bockoff & Zamler, P.C.* (by *John J. Futchko*), for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Suzanne P. Walworth*), for defendant.

Before: J. H. GILLIS, P.J., and BEASLEY and SAWYER, JJ.

PER CURIAM. Plaintiff, Helen Bauer, filed this action for damages in the Wayne Circuit Court on April 27, 1982, claiming that she injured herself when she fell in a shopping center parking lot and that ice and snow on the surface of the lot caused the fall and, thereby, the injury. The lot was owned by defendant, City of Garden City. On March 7, 1984, the trial court granted defendant city's motion for summary judgment. This Court reversed that decision in *Bauer v Garden City*,[1] a case decided on December 3, 1984, remanding the case to the trial court. Defendant city neither filed a motion for rehearing nor applied for leave to appeal to the Supreme Court. Less than four weeks after this Court's decision, however, the Supreme Court decided *Ross v Consumers Power Co (On Rehearing)*.[2] Defendant subsequently moved for summary disposition on grounds that it

[1] 139 Mich App 354; 362 NW2d 280 (1984).
[2] 420 Mich 567; 363 NW2d 641 (1984).

was governmentally immune under *Ross*. The trial Court denied that motion in an order filed November 12, 1985. This Court granted defendant's application for leave to appeal, and plaintiff subsequently brought a cross-appeal.

Defendant's position on appeal is that it was governmentally immune under *Ross* for the reason that it was engaging in a governmental function. Plaintiff denies this and further argues that defendant's appeal is barred by the doctrine of law of the case. In her cross-appeal, plaintiff argues that defendant's failure to timely assert governmental immunity as an affirmative defense constitutes a waiver of that issue. We discuss plaintiff's cross-appeal first, because a decision in plaintiff's favor on that issue would obviate the issues raised in defendant's appeal.

Plaintiff's cross-appeal is based largely on the following language from MCR 2.111(F):

> (2) *Defenses Must Be Pleaded; Exceptions.* A party against whom a cause of action has been asserted by complaint, cross-claim, counterclaim, or third-party claim must assert in a responsive pleading the defenses the party has against the claim. A defense not asserted in the responsive pleading or by motion as provided by these rules is waived, except for the defenses of lack of jurisdiction over the subject matter of the action, and failure to state a claim on which relief can be granted. . . .
>
> (3) *Affirmative Defenses.* Affirmative defenses must be stated in a party's responsive pleading. Under a separate and distinct heading, a party must state the facts constituting
>
> (a) an affirmative defense, such as contributory negligence; assumption of risk; payment; release; satisfaction; discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of con-

sideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery . . . .

Plaintiff contends that defendant had failed to assert an affirmative defense, to wit, "immunity granted by law," in a timely fashion and so has waived it. Plaintiff is mistaken, however, about the nature of governmental immunity. In *Hyde v Univ of Michigan Bd of Regents*,[3] the Supreme Court specifically held that *plaintiffs* bear the burden of pleading facts in their complaints which would justify a finding that recovery in their tort cause of action is not barred by governmental immunity. The Court reasoned that unlike other claims of immunity, sovereign and governmental immunity are not affirmative defenses, but characteristics of government which prevent imposition of tort liability. For this reason, defendant city did not waive governmental immunity by not pleading it in its responsive pleadings. We now turn to the issues in defendant's appeal.

Both parties cite the following passage from *Ross* as controlling on the question of whether the operation of the parking lot constituted a governmental function, thus rendering defendant immune:

> We therefore conclude that a governmental function is an activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law. When a governmental agency engages in mandated or authorized activities, it is immune from tort liability, unless the activity is proprietary in nature (as defined in § 13) or falls within one of the other statutory excep-

---

[3] 426 Mich 223, 261; 393 NW2d 847 (1986), citing *Ross, supra,* p 621, and *Galli v Kirkeby,* 398 Mich 527, 532, 540-541, n 5; 248 NW2d 149 (1976).

tions to the governmental immunity act. Whenever a governmental agency engages in an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law (*i.e.,* an *ultra vires* activity), it is not engaging in the exercise or discharge of a governmental function. The agency is therefore liable for any injuries or damages incurred as a result of its tortious conduct.[4]

Defendant cites, as its statutory mandate for maintaining a parking lot, the following passage from MCL 117.4h; MSA 5. 2081:

Each city may in its charter provide:

\* \* \*

(6) For the acquiring, establishment, operation, extension and maintenance of facilities for the storage and parking of vehicles within its corporate limits, including the fixing and collection of charges for services and use thereof on a public utility basis, and for such purpose to acquire by gift, purchase, condemnation or otherwise the land necessary therefor.

Defendant also points to § 1.03 of its charter, giving it "all powers possible for a city to have under the constitution and laws of this state as fully and completely as though they were specifically enumerated in the Charter." In addition, the various ordinances in Chapter 98 of defendant's charter extensively regulate parking lots. Section 98.23 goes so far as to state that the policy of the city is to provide handicapper parking spaces in "any *municipal parking area.*"

Plaintiff argues that, while these statutes and ordinances may *permit* the city to operate a parking lot, they do not expressly *mandate* or *require*

---

4 *Ross, supra,* p 620.

such operation. For this reason, plaintiff says, the operation of the parking lot is not a governmental function under the above quoted language in *Ross,* so that defendant is not governmentally immune.

A similar argument was raised by the plaintiff in *Hyde, supra,* who said that the particular types of routine medical care provided by public general hospitals were not authorized by statute or other law. The Supreme Court responded:

> Plaintiff has misperceived how the *Ross* definition of "governmental function" should be applied. *It is not necessary that there be a specific statutory provision* mandating or authorizing a hospital to set bones or deliver babies. Such an interpretation would emasculate the governmental immunity act and *Ross,* as well as result in a proliferation of unnecessarily detailed legislation. *Ross only requires that there be some constitutional, statutory, or other legal basis for the activity in which the governmental agency was engaged* when the alleged tort was committed. The governmental immunity act, as interpreted by *Ross,* permits imposition of tort liability upon a governmental agency only where the agency was engaged in an ultra vires activity, i.e., an activity which is not expressly or impliedly mandated or authorized by constitution, statute, or other law. *Ross,* p 620. [Emphasis added.][5]

Consistent with the *Ross* mandate that a governmental function be broadly defined to encompass most activities of government and because defendant's charter provision giving defendant "all powers possible for a city to have under the constitution and laws of this state" incorporated by reference the parking facility language in MCL 117.4h; MSA 5.2081, defendant's operation of the parking lot was a governmental function.

---

[5] *Hyde, supra,* pp 252-253.

Plaintiff argues, however, that the doctrine of the law of the case bars defendant's appeal on this issue. That doctrine, as restated by the Supreme Court in *CAF Investment Co v Saginaw Twp*,[6] establishes the following rule: "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." It is an old doctrine in Michigan, going back at least to 1877.[7]

In particular, plaintiff argues that the following language, near the end of this Court's earlier decision on the prior appeal of this case, establishes the law of the case:

> Defendant raises no defense on governmental immunity. In any event, we do not view ownership of a shopping center parking lot as a "governmental function." MCL 691.1407; MSA 3. 996(107). We hold that the city, as the owner of a commercial parking lot, owed plaintiff a duty of reasonable care.[8]

Defendant points out that the bulk of this Court's earlier decision was a determination whether the rule of "natural accumulation" applied to the situation described in the complaint. This, indeed, was the basis of the trial court's decision granting summary judgment prior to the first appeal. Defendant says that this Court did not actually decide that issue because that issue was not before us. We disagree. Plaintiff asserts, and defendant does not deny, that plaintiff argued the

---

[6] 410 Mich 428, 454; 302 NW2d 164 (1981).

[7] See *Lyon v Ingham Circuit Judge*, 37 Mich 377, 378-379 (1877).

[8] *Bauer, supra,* p 357.

question of governmental immunity in her brief on the first appeal. That defendant may have elected not to respond to this argument is defendant's own doing. The issue was before this Court and was decided.

Defendant also argues, however, that the determination whether the operation of a parking lot constituted a governmental function was unnecessary to the determination of the outcome reached and was, thus, obiter dicta. For this reason, defendant says, the doctrine of the law of the case should not be applied to our earlier decision. It is true that the decision was unnecessary for the determination of the outcome. If we were now deciding a different case between different parties with different facts and were looking upon our earlier decision only for its precedential value, we would decline to give it full precedential weight under the old rule that obiter dicta has only the weight of "expressions of men learned in the law," rather than the force of controlling precedent.[9]

This is not the case here, however. These are the same parties and this is the same action with the identical facts. The cases defendant cites in support of its argument that obiter dicta "lacks the force of an adjudication" say either that it lacks the full weight of precedent in *later* cases,[10] that dicta is not binding on a court when it utters it while expressly declining to rule on an issue,[11] or that courts should not make holdings which would be mere dicta.[12] None of these cases say that the

[9] *Whitehead & Kales Co v Taan,* 233 Mich 597, 601; 208 NW 148 (1926).

[10] *Whitehead & Kales, supra; People v Case,* 220 Mich 379; 190 NW 289 (1922); *Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975).

[11] *People v Hamm,* 120 Mich App 388, 393-394; 328 NW2d 51 (1982).

[12] *Hett v Duffy,* 346 Mich 456; 78 NW2d 284 (1956); *Huler v Nasser,* 322 Mich 1; 33 NW2d 637 (1948).

doctrine of the law of the case does not apply to dicta.

There are sound reasons against declaring such a rule. The problem with dicta, and a good reason that it should not have the force of precedent for later cases, is that when a holding is unnecessary to the outcome of a case, it may be made with less care and thoroughness than if it were crucial to the outcome. Because the legal holdings in published cases are binding not only on the parties to those cases, but also on all later parties in all later cases, allowing dicta to be precedent would have the unfair effect of binding litigants who have never had the opportunity to argue the issue to a remark of the court, which may not be the best expression of the court's studies. The same argument, however, does not apply to the actual litigants before the court when the decision is made. These litigants *have* had an opportunity to argue the issue decided, if it is properly before the court. Courts make brief judgments all the time, but these judgments are nonetheless binding on the parties to the particular lawsuit. If an issue is properly before this Court, the Court's decision on the question is binding on the lower court and on any later panels which hear the case, under the doctrine of the law of the case.

There is one case appearing to hold otherwise and another citing it. As to each of these cases, however, we observe that the issue which was dicta was also never squarely before the Court on the earlier appeal, and that the later courts specifically said so.[13] Indeed, the first of these cases, *Cicelski v Sears*,[14] appeared to confuse the issue by

---

[13] *People v Goliday*, 153 Mich App 29, 32-33; 394 NW2d 476 (1986); *Cicelski v Sears, Roebuck & Co*, 132 Mich App 298; 348 NW2d 685 (1984).

[14] *Cicelski, supra*, p 306.

saying that because the particular question was never squarely before the prior panel, the resolution of it in a footnote was dicta and, therefore, not the law of the case. We think the panel need not have added the second step, but instead should have merely asserted that, because the question was not squarely before its predecessor, it was not the law of the case. That rule would apply in this case as well, except for the fact that the question of governmental immunity *was* before the prior panel.

Finally, we should consider whether the fact that *Ross,* which contradicts this Court's earlier holding in this case, was decided in between the earlier holding and this one should make any difference to the application of the law of the case doctrine. The case of *People v Russell*[15] decided, after much discussion, that an intervening change in the law does not alter the applicability of the law of the case doctrine. There, a criminal defendant pled guilty pursuant to a plea bargain but was not told that he could not be placed on probation for the particular offense involved. This Court reversed and remanded, but before the trial court could retake the plea, the Supreme Court decided *People v Jackson,*[16] ruling that the failure to advise a defendant pleading guilty pursuant to a plea bargain that his offense is not probationable is not per se error requiring reversal. The trial court assumed that *Jackson* had given it the authority to reinstate the conviction and did so. On a second appeal, this Court disagreed, analyzing the history and purpose of the doctrine of the law of the case and determining that its prior decision was bind-

---

[15] 149 Mich App 110; 385 NW2d 613 (1985).
[16] 417 Mich 243, 246; 334 NW2d 371 (1983).

ing on the circuit court regardless of the intervening decision of the Supreme Court.[17]

At first blush, it would appear that *Burk v Warren (After Remand),*[18] conflicts with *Russell* because it seems to decline to apply the law of the case due to the intervening decision of *Cassidy v McGovern.*[19] An examination of the facts, however, indicates that *Burk* was in a different procedural posture than either *Russell* or this case. In *Burk,* the disappointed litigant *had* applied for leave to appeal to the Supreme Court, which had remanded the case specifically for redetermination in light of *Cassidy.* The law of the case doctrine was, thus, inapplicable, not because *Cassidy* intervened, but because the Supreme Court ordered that *Cassidy* be applied to that particular case on direct review from this Court's earlier decision.

It might be argued that, because *Ross* contains specific instructions, reiterated by *Hyde,* for its retroactive and prospective application and because *Jackson* does not, the intervening decision should mean more here than it did in *Russell.* We do not think this is the case. Many decisions on governmental immunity were handed down by this Court prior to *Ross* without any motions for rehearing or applications to the Supreme Court. To allow relitigation at the appellate level of every one of these cases which happened to remain at the trial level when *Ross* was decided would be imprudent indeed. Defendant had the opportunity to appeal this Court's decision and did not. Defendant is bound by that decision.

Affirmed.

---

[17] See also *Totzkay v DuBois (After Remand),* 140 Mich App 374, 378; 364 NW2d 705 (1985).

[18] 137 Mich App 715, 726-727; 359 NW2d 541 (1984), aff'd 427 Mich 32 (1986).

[19] 415 Mich 483; 330 NW2d 22 (1982).