O’Donnell, J.,
concurring in part and dissenting in part.
*282 {¶ 68} I agree with the lead opinion that 2007 Am.Sub.S.B. No. 10 violates the separation-of-powers doctrine because the applicable statutes require the attorney general, a member of the executive branch of government, to reclassify sexual offenders who have been previously classified as either sexually oriented offenders, habitual sexual offenders, or sexual predators in accordance with a determination by a member of the judicial branch of government. However, I dissent from that part of the lead opinion discussing the doctrine of stare decisis, because it is wholly dicta and superfluous to the decision of the lead opinion that the reclassification provisions of S.B. 10 are unconstitutional.
Separation of Powers
{¶ 69} In October 1999, Christian Bodyke entered no-contest pleas to breaking and entering and sexual battery. The trial court sentenced him to an aggregate two-year term of imprisonment and declared him a sexually oriented offender pursuant to statutes in effect at that time. As a sexually oriented offender, Bodyke had the duty to register every year for ten years and was not subject to community notification. See former R.C. 2950.07(B)(3) and (B)(2), 146 Ohio Laws, Part II, 2617, 2613; former R.C. 2950.11(A) and (F), id. at 2626-2627, 2630.
{¶ 70} In 2006, Congress passed the Adam Walsh Child Protection and Safety Act, Section 16901 et seq., Title 42, U.S.Code, and provided financial incentives to states for creating similar legislation. See Section 16925(a). Ohio became the first state in the nation to follow suit and enacted S.B. 10.
{¶ 71} In November 2007, Attorney General Marc Dann notified Bodyke that he had been reclassified as a Tier III sexual offender pursuant to newly enacted S.B. 10. As a result of the Tier III reclassification, Bodyke had new registration requirements in that he had to register every 90 days for life and also became subject to community notification. R.C. 2950.06(B)(3), 2950.07(B)(1), and 2950.11(A).
{¶ 72} Former R.C. 2950.09(B)(1) mandated that the trial court conduct a hearing and determine whether to adjudicate an offender to be a sexual predator or a habitual sexual offender. 146 Ohio Laws, Part II, 2618. Former R.C. 2950.09(B)(2) and (3) required the court to weigh listed factors to “determine by clear and convincing evidence whether the offender is a sexual predator.” See 146 Ohio Laws, Part II, 2618-2619. If the court found that the offender was not a sexual predator, the statute directed it to “specify in the offender’s sentence and the judgment of conviction * * * that the offender is not a sexual predator.” Former R.C. 2950.09(E) required the court to specify in its entry whether it had determined the offender to be a habitual sexual offender. 146 Ohio Laws, Part II, 2624.
*283 {¶ 73} This statute thus directed the trial court to determine whether an offender was a sexual predator or a habitual sexual offender; by implication, the court also determined if an offender was a sexually oriented offender. See State v. Cook (1998), 83 Ohio St.3d 404, 407, 700 N.E.2d 570 (“A sexually oriented offender is one who has committed a ‘sexually oriented offense’ as that term is defined in R.C. 2950.01(D) but who does not fit the description of either habitual sex offender or sexual predator”).
{¶ 74} In Bodyke’s case, the trial court’s judgment of conviction reflects that it “adjudicated” Bodyke to be a sexually oriented offender. Therefore, when the General Assembly directed the attorney general to reclassify him, it impermissi-bly invaded the province of the judiciary by mandating the reopening of a final judgment and by directing that a judicial function be performed by a member of the executive branch of government. As we stated in Bartlett v. State (1905), 73 Ohio St. 54, 58, 75 N.E. 939, “it is well settled that the Legislature cannot annul, reverse, or modify a judgment of a court already rendered * * See also Gompf v. Wolfinger (1902), 67 Ohio St. 144, 65 N.E. 878, paragraph three of the syllabus (“A judgment which is final by the laws existing when it is rendered cannot constitutionally be made subject to review by a statute subsequently enacted * * * ”).
{¶ 75} Accordingly, I concur with the lead opinion’s holding that S.B. 10 is unconstitutional in that it requires the attorney general, a member of the executive branch of government, to reclassify sex offenders who had previously been adjudicated and classified pursuant to a final order of a court.
Stare Decisis
{¶ 76} I dissent from the lead opinion, however, regarding its statements about the inapplicability of the doctrine of stare decisis to constitutional claims. The lead opinion in doing so reaches to decide a question that does not need to be resolved at this time.
{¶ 77} Initially, it should be noted that neither party has specifically asserted or briefed the issue of what role stare decisis should play in ruling on constitutional questions. We therefore should not raise this question on our own initiative, because as we explained in Sizemore v. Smith (1983), 6 Ohio St.3d 330, 333, 6 OBR 387, 453 N.E.2d 632, fn. 2, “[i]t has long been the policy of this court not to address issues not raised by the parties. * * * This court should be hesitant to decide such matters for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.”
{¶ 78} “The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially *284 as arbiters of legal questions presented and argued by the parties before them.” Carducci v. Regan (C.A.D.C.1983), 714 F.2d 171, 177. Proceeding to decide an issue not briefed by the parties creates “ ‘the risk “of an improvident or ill-advised opinion, given [the court’s] dependence * * * on the adversarial process for sharpening the issues for decision.” ’ ” Carbino v. West (C.A.Fed.1999), 168 F.3d 32, 35, quoting Headrick v. Rockwell Internatl. Corp. (C.A.10, 1994), 24 F.3d 1272, 1278, quoting Herbert v. Natl. Academy of Sciences (C.A.D.C.1992), 974 F.2d 192, 196.
{¶ 79} As the lead opinion admits, we have not before had an opportunity to consider the constitutionality of the reclassification provisions of S.B. 10. Thus, the lead opinion’s discussion of the role of stare decisis in constitutional interpretation is unnecessary to reach its holding that these reclassification provisions violate the separation-of-powers doctrine.
{¶ 80} We usually decline to rule on questions that are not necessary to a proper disposition of a case. This restriction exists because “[a] hallmark of judicial restraint is to rule only on those cases that present an actual controversy. To do otherwise — to simply answer a hypothetical question merely for the sake of answering it — would make this court nothing more than an advisory board.” Ahmad v. AK Steel Corp., 119 Ohio St.3d 1210, 2008-Ohio-4082, 893 N.E.2d 1287, ¶ 3 (O’Connor, J., concurring). See also Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 257 N.E.2d 371 (“It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect”).
{¶ 81} Here, there is no actual controversy between the parties over how the doctrine of stare decisis should apply when the meaning of the Constitution is at issue, and any attempt to unnecessarily decide that question in this case contravenes well-settled law that this court will not issue advisory opinions. State ex rel. White v. Kilbane Koch, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections (2000), 90 Ohio St.3d 238, 242, 736 N.E.2d 893, and Egan v. Natl. Distillers & Chem. Corp. (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904, syllabus.
{¶ 82} To compound the problem, the lead opinion goes too far in concluding that the doctrine of stare decisis is inapplicable to constitutional claims. We previously stated in Rocky River v. State Emp. Relations Bd. (1989), 43 Ohio St.3d 1, 5, 539 N.E.2d 103, that stare decisis “does not apply with the same force and effect when constitutional interpretation is at issue.” (Emphasis added.) But stating that stare decisis applies with less force is a far cry from the proposition that it is wholly inapplicable, and it is telling that the lead opinion musters no direct authority for this overbroad holding.
*285 {¶ 83} Fidelity to precedent is “vital to the proper exercise of the judicial function * * * [and] ‘is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” Citizens United v. Fed. Election Comm. (2010), — U.S. -, 130 S.Ct. 876, 920, — L.Ed.2d-, quoting Payne v. Tennessee (1991), 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720.
{¶ 84} Thus, as the Supreme Court of the United States has acknowledged, “ ‘even in constitutional cases, the doctrine [of stare decisis] carries such persuasive force that we have always required a departure from precedent to be supported by some “special justification.” ’ ” Dickerson v. United States (2000), 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405, quoting United States v. Internatl. Business Machines Corp. (1996), 517 U.S. 843, 856, 116 S.Ct. 1793, 135 L.Ed.2d 124, quoting Payne at 842, 111 S.Ct. 2597, 115 L.Ed.2d 720 (Souter, J., concurring). See also Citizens United, — U.S. at-, 130 S.Ct. at 921, — L.Ed.2d-(“It follows that in the unusual circumstance when fidelity to any particular precedent does more to damage this constitutional ideal than to advance it, we must be more willing to depart from that precedent”).
{¶ 85} Moreover, while the lead opinion asserts that the tripartite test for departing from precedent that we adopted in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, has no application to constitutional questions, the court in Galatis specifically recognized that “the United States Supreme Court utilized a similar trifold stare decisis test in Lawrence v. Texas (2003), 539 U.S. 558, [574-578] 123 S.Ct. 2472, 2482-2483, 156 L.Ed.2d 508.” Galatis at ¶ 48, fn. 5. Lawrence involved the question whether to overrule Bowers v. Hardwick (1986), 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140, on the question whether the Constitution permits prosecution for private acts of homosexual sex. Further, the Supreme Court of the United States in Lawrence derived the test from Planned Parenthood of Southeastern Pennsylvania v. Casey (1992), 505 U.S. 833, 855,112 S.Ct. 2791,120 L.Ed.2d 674, which itself dealt with the question whether to overrule Roe v. Wade (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, on a question of constitutional interpretation.
{¶ 86} My point is not to plot the precise boundaries of the application of stare decisis to constitutional questions — that issue is not before the court. Rather, I only emphasize that it is by no means clear that the doctrine of stare decisis and the Galatis test are wholly inapplicable to cases involving constitutional issues. We should await a case presenting concrete facts and parties actively litigating and properly briefing the question, which may reveal additional arguments for retaining or modifying the Galatis framework in cases of constitutional import.
*286 {¶ 87} Lastly, it is ironic that the lead opinion’s statement on the binding power of precedent is itself obiter dictum that compels no obedience. A court is not bound to follow its own dicta from a prior case in which the point at issue “was not fully debated.” Cent. Virginia Community College v. Katz (2006), 546 U.S. 356, 363, 126 S.Ct. 990, 163 L.Ed.2d 945; see also Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc. (1994), 70 Ohio St.3d 281, 284, 638 N.E.2d 991 (explaining that dicta in a prior case “has no binding effect on this court’s decision in this case”).
{¶ 88} As Chief Justice Marshall explained long ago in Cohens v. Virginia (1821), 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257, “It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.”
{¶ 89} After all, “[t]he problem with dicta, and a good reason that it should not have the force of precedent for later cases, is that when a holding is unnecessary to the outcome of a case, it may be made with less care and thoroughness than if it were crucial to the outcome.” Bauer v. Garden City (1987), 163 Mich.App. 562, 571, 414 N.W.2d 891.
{¶ 90} I am reminded of Chief Justice Roberts’s statement in PDK Laboratories, Inc. v. United States Drug Enforcement Adm. (C.A.D.C.2004), 362 F.3d 786, 799 (Roberts, J., concurring in part and concurring in the judgment), where he wrote that the “the cardinal principle of judicial restraint [is that] if it is not necessary to decide more, it is necessary not to decide more.” In Meyer v. United Parcel Serv., Inc., 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 53, we followed this limitation, citing this very quotation.
{¶ 91} For these reasons, while I agree with the lead opinion that the reclassification provisions of S.B. 10 violate the doctrine of the separation of powers, I cannot join the lead opinion’s unnecessary ruminations on the doctrine of stare decisis. Accordingly, I concur in the judgment that reclassification of sexual offenders who have previously been classified by members of the judicial branch of government by the Attorney General of Ohio, a member of the executive branch of government, violates the separation-of-powers doctrine, but dissent from the remainder of the opinion.